# EXHIBIT A

Loan No.

# FIXED RATE NOTE

  

December 20, 2006
[Date]

White Plains
[City]

NY
[State]

45 JACKSON LANE, SICKLERVILLE, NJ 08081
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 172,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **8.350 %**.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on  **February 1, 2007**.

I will make these payments every month until I have paid all of the principal and interest and any other charges described that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  **January 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

**I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.

#### (B)  Amount of Monthly Payments

My monthly payments will be in the amount of U.S. **$1,304.30**.

### 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time without a penalty.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be **5.000 %** of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

#### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: _UD_

12/20/2006 10:31:17 AM

200-1UNIV (Rev  03/05)

**(D)  No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

PAY TO THE ORDER OF

WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC

BY: _____
SAM MARZOUK, PRESIDENT

BY: _____
GREGORY T. HOOPER

_____ (Seal)
Borrower:   MARK F. DORITY, Sr.

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

Initials: _____

12/20/2006 10:31:17 AM

200-2UNIV (Rev 03/05)

# EXHIBIT B

Return To:

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683

Prepared By: Argent Mortgage Company, LLC

Erica Cunningham
333 Westchester Avenue, 1st
Floor, White Plains, NY 10604

FILE NUMBER 2007004505
RECORDED 01/12/2007 10:23:41
RECORDING FEES 180.00; M-NOT 0.00; RTF 0.00; RECD BY: velonnt

CAPITAL ASSURANCE GROUP, INC.
2 EXECUTIVE CAMPUS-SUITE 310
CHERRY HILL, NJ 08002

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 20, 2006
together with all Riders to this document.
(B) "Borrower" is MARK F. DORITY, Sr., MARRIED MAN
          AND LISA L. DORITY, HIS WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

VMP -6(NJ) (0005)
Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

12/20/2006 10:31:17

D06-01NJ (05/2005)Rev.01

**Schedule "A" Legal Description**

ALL THAT CERTAIN LAND AND PREMISES SITUATE IN THE TOWNSHIP OF WINSLOW,
COUNTY OF CAMDEN AND THE STATE OF NEW JERSEY, BOUNDED AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT IN THE CURVED SOUTHERLY LINE OF JACKSON LANE DISTANT
SOUTHEASTWARDLY A TOTAL ARC AND TANGENT DISTANT OF 249.25 FEET FROM THE
SOUTHERLY END OF THE CURVE RADIUS 20 FEET CONNECTING THE CURVE WESTERLY
LINE OF JACKSON LANE WITH THE CURVED SOUTHWESTERLY LINE OF JUNIPER LANE;
THENCE

(1) EASTWARDLY ALONG THE CURVED SOUTHERLY LINE OF JACKSON LANE, CURVING TO
THE LEFT WITH A RADIUS OF 125 FEET AN ARC DISTANCE OF 75 FEET TO A POINT; THENCE

(2) SOUTH 09 DEGREES 05 MINUTES 02 SECONDS WEST, A DISTANCE OF 144.37 FEET TO A
POINT; THENCE

(3) SOUTH 73 DEGREES 31 MINUTES 13 SECONDS WEST, A DISTANCE OF 159.64 FEET TO
THE NORTHEASTERLY LINE OF ERIAL-WILLIAMSTOWN ROAD; THENCE

(4) NORTH 16 DEGREES 44 MINUTES 41 SECONDS WEST ALONG SAID ERIAL-
WILLIAMSTOWN ROAD 83.12 FEET TO A POINT; THENCE

(5) NORTH 43 DEGREES 27 MINUTES 41 SECONDS EAST A DISTANCE OF 194.19 FEET TO
PLACE OF BEGINNING.

BEING LOT 26, BLOCK 2302-A, SUBDIVISION MAP JUNIPER HILL, SECTION 18, AT
INDEPENDENCE VILLAGE, FILED 12/17/75 AS MAP #581-8

NOTE FOR INFORMATION ONLY:  THE LAND REFERRED TO IN THIS LEGAL DESCRIPTION IS
COMMONLY KNOWN AS LOT 26, BLOCK 12001 ON THE TAX MAP, TOWNSHIP OF WINSLOW,
COUNTY OF CAMDEN, STATE OF NEW JERSEY.

NOTE FOR INFORMATION ONLY: THE PROPERTY ADDRESS IS 45 JACKSON LANE,
SICKLERVILLE, NJ 08081, LOCATED WITHIN THE TOWNSHIP OF WINSLOW AND COUNTY OF
CAMDEN.

Lender's address is **3 Park Plaza - 10th Floor  Irvine, CA 92614**

Lender is the mortgagee under this Security Instrument.

(D) "**Note**" means the promissory note signed by Borrower and dated **December 20, 2006**
The Note states that Borrower owes Lender **one hundred seventy-two thousand and 00/100**
Dollars
(U.S. **$172,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **January 1, 2037**

(E) "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "**Escrow Items**" means those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

-6(NJ) (0005)          Page 2 of 16          Initials: _____          12/20/2006 10:31:17          **Form 3031 1/01**

D06-02NJ (05/2005)Rev.01

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

|  **County** | of | **CAMDEN** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Property Account Number 12001 26                        which currently has the address of
45 JACKSON LANE                                                                                [Street]
SICKLERVILLE                                          [City], New Jersey 08081              [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(NJ) (0005)                                   Page 3 of 16      Initials: _____   12/20/2006 10:31:17  Form 3031 1/01

D06-03NJ (05/2005)Rev.01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

D06-05NJ (05/2005)Rev.01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

D06-06NJ (05/2005)Rev.01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

D06-07NJ (05/2005)Rev.01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(NJ) (0005)                    Initials: _____    Page 8 of 15    12/20/2006 10:31:17    Form 3031 1/01

D06-08NJ (05/2005)Rev.01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(NJ) (0005)          Page 9 of 15    12/20/2006 10:31:17    Form 3031 1/01

Initials: _____

D06-09NJ (05/2005)Rev.01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

-6(NJ) (0006)                   Page 11 of 15    12/20/2006 10:31:17    Form 3031 1/01

Initials: _____

D06-11NJ (05/2005)Rev.01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(NJ) (0005)

Initials: _MDllA_

Page 12 of 15   12/20/2006 10:31:17   Form 3031 1/01

D06-12NJ (05/2005)Rev.01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

DAVID CLAPPSY

_____ (Seal)
MARK F. DORITY, Sr.                      -Borrower

_____ (Seal)
LISA L. DORITY                                -Borrower

_____(Seal)        _____(Seal)
            -Borrower                             -Borrower

_____(Seal)        _____(Seal)
            -Borrower                             -Borrower

_____(Seal)        _____(Seal)
            -Borrower                             -Borrower

-6(NJ) (0005)                    Page 14 of 15    12/20/2006 10:31:17    Form 3031 1/01

D06-14NJ (05/2005)Rev.01

STATE OF NEW JERSEY,    _CAMDEN_ County ss:

On this _20th_ day of _Dec_ _2006_ , before me, the
      Day                    Month/Year
subscriber, personally appeared

_Mark F. Dority SR + Lisa L. Dority_

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and
thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their
act and deed, for the purposes therein expressed.

Notary Public

DAVID R. CLAPPSY
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 12-16-07
I.D. NO.: 2294953

Page 16 of 16

12/20/2006 10:31:17 AM

400-15NJ (05/2005)Rev.01

After Recording Return To:
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

**This Document Prepared By:**
**Tatiana Vakidis**

**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**
**1-888-366-1119**

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: **$172,000.00**
New Money: **$10,810.52**

Loan No█
Investor Loan No:█

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): **MARK DORITY.** Dated this _18th_ day of _September_, _2014_. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):

Loan Number: █
Property Address ("Property"): **45 JACKSON LANE**
**SICKLERVILLE, NJ 08081**

**Legal Description:**

**Prior instrument reference: Book/Liber N/A, of the Official Records of County, NJ.**

If my representations and covenants in Section 1 continue to be true in all material respects, then this

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
8306 01/14                                          **Form 3157 3/09 (rev. 10/10)** _(page 1 of 8 pages)_

Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

   H. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be

obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **October 1, 2014** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **November 1, 2014**.

   A. The Maturity Date will be: **October 1, 2054**.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$114,917.46** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. **$6,785.93** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$108,131.53**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **October 1, 2014** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **November 1, 2014**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|--------------|---------------------------|-----------------------------------|-------------------------------|----------------------|-------------------|----------------------------|
| 1-5 | 2.000% | October 01, 2014 | $327.45 | $593.24 May adjust periodically | $920.69 May adjust periodically | November 01, 2014 | 60 |
| 6 | 3.000% | October 01, 2019 | $380.42 | May adjust periodically | May adjust periodically | November 01, 2019 | 12 |
| 7 | 4.000% | October 01, 2020 | $436.33 | May adjust periodically | May adjust periodically | November 01, 2020 | 12 |
| 8-40 | 4.125% | October 01, 2021 | $443.44 | May adjust periodically | May adjust periodically | November 01, 2021 | 396 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
8306 01/14                                                    Form 3157  3/09  (rev. 10/10) (page 4 of 8 pages)

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to

me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. This Agreement modifies an obligation secured by an existing security instrument recorded in County, NJ, upon which all recordation taxes have been paid. As of the date of this agreement,

the unpaid principal balance of the original obligation secured by the existing security instrument is $104,106.94. The principal balance secured by the existing security instrument as a result of this Agreement is $114,917.46, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**MARK DORITY** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey

County of _Camden_ ss

I certify that on this __18th__ day of _September_ , 20_14_, **MARK DORITY**, personally came before me, a Notary Public and acknowledged under oath, to my satisfaction, the he (she) is named in and personally signed this document; and delivered this document as his (her) act and deed.

_____
NOTARY PUBLIC

My commission expires : _2/19/2017_

DEBORAH A. IANNACO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 2/19/2017

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
8306 01/14                                              Form 3157 3/09 (rev. 10/10) (page 7 of 8 pages)

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _Aviral Hadolbija_
Title: _Assistant_

_10/10/2014_
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of ___Denton___ _total._

Before me _Eric Todd Rittmueller_ _____ (name/title of officer) on this day personally appeared

_Aviral Hadolbija_ _____, the _____ Assistant Title _____ of

_____ Nationstar Mortgage LLC _____,'

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __10th__ day of __October__, A.D. __2014__

_____
Signature of Officer

_____ sint. _____
Title of Officer

My Commission expires : __10-9-17__

ERIC TODD RITTMUELLER
Notary Public, State of Texas
My Commission Expires
October 09, 2017

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
8306 01/14                                           Form 3157  3/09  (rev. 10/10) *(page 8 of 8 pages)*

# EXHIBIT C

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 10045 PG 0312
RECORDED 07/23/2014 15:25:19
FILE NUMBER 2014049476
RCPT #: 14544801 RECD BY: lorll
RECORDING FEES 30.00
MARGINAL NOTATION 10.00

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan N
Referen

# ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA
71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over
the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to
NRZ PASS-THROUGH TRUST IV, U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, WHOSE
ADDRESS IS 60 LIVINGSTON AVENUE, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS,
(ASSIGNEE).

Said Mortgage is dated on 12/20/2006, made by MARK F. DORITY, SR. AND LISA L. DORITY to ARGENT
MORTGAGE COMPANY, LLC, and recorded in Book 08439, Page 1290 and Instrument # 2007004505, in the
office of the Register of Titles and County Recorder in CAMDEN County, New Jersey.

Property is commonly known as: 45 JACKSON LANE
SICKLERVILLE, NJ 08081.

Dated on _Ob / 27 / 2014_ (MM/DD/YYYY)
ARGENT MORTGAGE COMPANY, LLC, by JPMORGAN CHASE BANK, N.A. SUCCESSOR BY
MERGER TO CHASE HOME FINANCE, LLC, S/B/M TO CHASE MANHATTAN MORTGAGE
CORPORATION, Its Attorney-in-Fact

By: _Latonya Hawkins_
_Latonya Hawkins_
_Vice President_

STATE OF LOUISIANA    PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on _Ob / 27 / 20N_ (MM/DD/YYYY), by
_Latonya Hawkins_ as _Vice President_ for
JPMORGAN CHASE BANK, N.A. SUCCESSOR BY MERGER TO CHASE HOME FINANCE, LLC, S/B/M
TO CHASE MANHATTAN MORTGAGE CORPORATION as Attorney-in-Fact for ARGENT MORTGAGE
COMPANY, LLC , who, as such _Officer_ , being authorized to do so,
executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Eva Reese_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

EVA REESE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 17070

Document Prepared By: _Latonya Hawkins_ JPMorgan Chase Bank, N.A., 780 Kansas Lane,
Suite A, Monroe, LA, 71203
[POA][PCAR 24062921 *C* - NPL9  T2514062808 [C-1] FRMNJ]

CAMDEN COUNTY, NJ

# Camden County
# Document Summary Sheet

CAMDEN COUNTY CLERK

520 MARKET ST
CAMDEN NJ 08102

ASSN MTG-OR BOOK 10241 PG 1635
RECORDED 08/03/2015 15:32:27
FILE NUMBER 2015059135
RCPT # 1618456; RECD BY: eRecord
RECORDING FEES 40.00
MARGINAL NOTATION FEE 10.00

**Official Use Only**

| Transaction Identification Number | | 2475970 | 1739512 |
|---|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 07/08/2015 | | |
| No. of Pages *(excluding Summary Sheet)* | 1 | | |
| Recording Fee *(excluding transfer tax)* | $40.00 | | |
| Realty Transfer Tax | $0.00 | | |
| Total Amount | $40.00 | | |

**Return Address** *(for recorded documents)*

NATIONWIDE TITLE CLEARING
2100 ALTERNATE 19 N
PALM HARBOR, FL 34683

| Document Type | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

CAMDEN COUNTY                    99

**Batch Type**

L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



## Camden County
## Document Summary Sheet

| Type | ASSIGNMENT OF MORTGAGE | | | |
|---|---|---|---|---|
| Consideration | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | |
| Document Date | 07/08/2015 | | | |
| Reference Info | | | | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 8439 | 1290 | 2007004505 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST IV | |

| ASSIGNEE AND MORTGAG | Name | Address |
|---|---|---|
| | BARCLAYS BANK PLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Nationstar Mortgage, LLC, 8950 Cypress Waters Blvd., Coppell, TX, 75019, telephone # 888-480-2432, who is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST IV, WHOSE ADDRESS IS 4000 HORIZON WAY, IRVING, TX, 75063, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to BARCLAY'S BANK PLC, WHOSE ADDRESS IS 745 SEVENTH AVENUE, NEW YORK, NY 10019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated on 12/20/2006, made by MARK F. DORITY, SR. AND LISA L. DORITY to ARGENT MORTGAGE COMPANY, LLC, and recorded in Mortgage Book 8439, Page 1290 and Instrument # 2007004505, in the office of the Register of Titles and County Recorder in CAMDEN County, New Jersey.
Property is commonly known as: 45 JACKSON LANE WINSLOW TWP
SICKLERVILLE, NJ 08081.

Dated this 08th day of July in the year 2015.
U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST IV, by NATIONSTAR MORTGAGE LLC, its Attorney-In-Fact (POA RECORDED: 05/13/2015 INSTR#: 2015037692)

_(signature)_

**ALYSSA WILLIAMS**

Vice President of Loan Documentation

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 08th day of July in the year 2015, by Alyssa Williams as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC as Attorney-in-Fact for U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST IV, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_(signature)_

**NICOLE BALDWIN**
**COMM EXPIRES: 08/05/2016**

> Nicole Baldwin
> Notary Public State of Florida
> My Commission # EE 222285
> Expires August 5, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
NSBTA 392057246 *C* – NRZBARCLAYS    DOCR T0215071413  [C-1] EFRMNJ1

 **Camden County**
**Document Summary Sheet**

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 10498 PG 1961
RECORDED 10/11/2016 11:42:03
FILE NUMBER 2016079825
RCPT # 1809903; RECD BY: eRecord
RECORDING FEES 42.00
MARGINAL NOTATION FEE 10.00

CAMDEN COUNTY CLERK

520 MARKET ST
CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | 2818927 | 2155640 |
|---|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 09/30/2016 | **Return Address** *(for recorded documents)* | |
| No. of Pages *(excluding Summary Sheet)* | 1 | RICHMOND MONROE | |
| Recording Fee *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $42.00 | 82 JIM LINEGAR LANE | |
| Realty Transfer Tax | $0.00 | BRANSON WEST, MO 65737 | |
| Total Amount | $42.00 | | |

| Document Type | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**
  CAMDEN COUNTY        99

Batch Type    L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Camden County
## Document Summary Sheet

| | Type | ASSIGNMENT OF MORTGAGE |
|---|---|---|
| | Consideration | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| | Document Date | 09/20/2016 |
| | Reference Info | |

| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|---|
| | OR | 8439 | 1290 | 2007004505 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | MARK F DORITY SR | |
| | LISA L DORITY | |
| | BARCLAYS BANK PLC | |

| ASSIGNEE AND MORTGAG- | Name | Address |
|---|---|---|
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2016079825 BK 10498 PG 1962

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Barclays Bank PLC / Leah Whitworth
P.O. Box 458
Kimberling City, MO, 65686

Loan #: ███████
TS Ref ███████

## CORPORATE ASSIGNMENT OF MORTGAGE

NJ/CAMDEN
MERS #: ███████   MERS Phone #: (888) 679-6377

Assignment Prepared on: July 21, 2018

Assignor: BARCLAYS BANK PLC, at 745 SEVENTH AVENUE, NEW YORK, NY, 10019

Assignee : Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Barclays Bank PLC, its successors and assigns, at P.O. Box 2026, Flint, MI, 48501-2026

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage dated 12/20/2006, in the amount of $172,000.00, executed by MARK F. DORITY, SR. AND LISA L. DORITY to ARGENT MORTGAGE COMPANY, LLC and Recorded: 1/12/2007, Instrument #: 2007004505, Book: 8439, Page: 1290 in CAMDEN County, State of NEW JERSEY.

Property Address: 45 JACKSON LANE, SICKLERVILLE, NJ, 08081

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BARCLAYS BANK PLC

On: 9/20/16

Signature: _____
Name:   Justin Cicero
Title:   Director

STATE OF ____NY____
COUNTY OF ____NY____
On 9/20/16, before me, ____Richard Eva____, a Notary Public in and for ____NY____ in the State of ____NY____, personally appeared Justin Cicero, Director, BARCLAYS BANK PLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: _____ / #: _____

NJ/CAMDEN

RICHARD R. EVA
Notary Public, State of New York
No. 01EV6331501
Qualified in New York County
Commission Expires Oct. 13, 2019



**Camden County**
**Document Summary Sheet**

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 10754 PG 10
RECORDED 11/09/2017 15:21:08
FILE NUMBER 2017082601
RCPT # 1960460; RECD BY: eRecord
RECORDING FEES 52.00
MARGINAL NOTATION FEE 10.00

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | 3181583 | 2606737 |
|---|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 10/17/2017 | **Return Address** *(for recorded documents)* | |
| No. of Pages *(excluding Summary Sheet)* | 2 | WESTCOR LAND TITLE INSURANCE COMPANY | |
| Recording Fee *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $52.00 | 875 CONCOURSE PARKWAY SOUTH SUITE 200 MAITLAND, FL 32751 | |
| Realty Transfer Tax | $0.00 | | |
| Total Amount | $52.00 | | |
| Document Type | ASSIGNMENT OF MORTGAGE | | |

**Municipal Codes**

| CAMDEN COUNTY | 99 |
|---|---|

| Batch Type | L2 - LEVEL 2 (WITH IMAGES) |
|---|---|

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



## Camden County
## Document Summary Sheet

| Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|
| Consideration | | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| Document Date | 10/05/2017 | | | | |
| Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
| | | 8439 | 1290 | 2007004505 | |

| ASSIGNMENT OF MORTGAGE | ASSIGNOR | Name | Address |
|---|---|---|---|
| | | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR BARCLAY | |
| | ASSIGNEE AND MORTGAG | Name | Address |
| | | TOWD POINT MASTER FUNDING TRUST 2017-NP1 | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

**PREPARED BY:**
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR
BARCLAYS BANK PLC, ITS SUCCESSORS
AND ASSIGNS
P.O. Box 2026, Flint, MI 48501-2026
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462

*ID:* ▓▓▓▓▓
*ALT ID:* ▓▓▓▓▓
*UID:* ▓▓▓▓▓

Parcel #: ▓▓▓▓▓

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BARCLAYS BANK PLC, ITS SUCCESSORS AND ASSIGNS**, located at P.O. Box 2026, Flint, MI 48501-2026, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **TOWD POINT MASTER FUNDING TRUST 2017-NP1**, located at: C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **MORTGAGE**, dated 12/20/2006 and executed by **MARK F. DORITY, SR., MARRIED MAN AND LISA L. DORITY, HIS WIFE,** borrower(s) to: **ARGENT MORTGAGE COMPANY, LLC**, as original lender, and certain instrument recorded **01/12/2007, in Book 8439, Page 1290, Instrument 2007004505,** in the Official Records of CAMDEN County, the State of New Jersey, given to secure a certain Promissory Note in the amount of **$172,000.00** covering the property located at **45 JACKSON LANE, SICKLERVILLE, NJ 08081.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

Dated: October ___5___, 2017

ASSIGNOR: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR BARCLAYS BANK
PLC, ITS SUCCESSORS AND ASSIGNS

By: _____

Name:  Jordan Epstein

Title:  Assistant Secretary

State of: NEW YORK

County of: NEW YORK

Before me, ____Maura C. Toglia____, duly commissioned Notary Public, on this day personally appeared Jordan
Epstein, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR BARCLAYS BANK PLC, ITS SUCCESSORS AND ASSIGNS, known to me (or proved to
me on the oath of _____ or through _____) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration
therein expressed in his/her authorized capacity.

Given under my hand and seal of office this ___5___ day of October, 2017.

_____
Notary Public's Signature

Printed Name: MAURA C. TOGLIA
Notary Public, State of New York
Lic. #01TO6044869
My Commission Expires: Qualified in Westchester County
My Commission Expires July 17, 20_18_

Property Address: 45 JACKSON LANE, SICKLERVILLE, NJ 8081



**Camden County**
**Document Summary Sheet**

CAMDEN COUNTY CLERK

520 MARKET ST
CAMDEN NJ 08102

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 10866 PG 549
RECORDED 04/19/2018 16:30:31
FILE NUMBER 2018027664
RCPT # 2021911; RECD BY: eRecord
RECORDING FEES 52.00
MARGINAL NOTATION FEE 10.00

**Official Use Only**

| Transaction Identification Number | | 3349689 | 2819060 |
|---|---|---|---|
| **Submission Date***(mm/dd/yyyy)* | 04/05/2018 | **Return Address** *(for recorded documents)* | |
| **No. of Pages** *(excluding Summary Sheet)* | 2 | MERIDIAN ASSET SERVICES | |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $52.00 | 3201 34TH STREET SOUTH SUITE 310 SAINT PETERSBURG, FL 33711 | |
| **Realty Transfer Tax** | $0.00 | | |
| **Total Amount** | $52.00 | | |
| **Document Type** | ASSIGNMENT OF MORTGAGE | | |

**Municipal Codes**

    CAMDEN COUNTY         99

Batch Type    L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

***\* DO NOT REMOVE THIS PAGE.***
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



**Camden County**
**Document Summary Sheet**

| Type | ASSIGNMENT OF MORTGAGE |
|---|---|
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 10/17/2017 |
| Reference Info | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 8439 | 1290 | 2007004505 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | MARK F DORITY | |
| | LISA L DORITY | |
| | TOWD POINT MASTER FUNDING TRUST 2017-NP1 | |
| | TOWD POINT MASTER FUNDING TRUST 2017-NP1 | |

| ASSIGNEE AND MORTGAG· | Name | Address |
|---|---|---|
| | MTGLQ INVESTORS LP | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2018027664 BK 10866 PG 550

**PREPARED BY:**
TOWD POINT MASTER FUNDING TRUST
2017-NP1
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
**WHEN RECORDED RETURN TO:**
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462

ID:
ALT
UID

Parcel #: 12001-26

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **TOWD POINT MASTER FUNDING TRUST 2017-NP1**, located at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **MTGLQ INVESTORS, L.P.**, located at: 6011 Connection Drive, Irving, TX 75039, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **MORTGAGE**, dated 12/20/2006 and executed by **MARK F. DORITY, SR., MARRIED MAN AND LISA L. DORITY, HIS WIFE**, borrower(s) to: **ARGENT MORTGAGE COMPANY, LLC**, as original lender, and certain instrument recorded 01/12/2007, in Book 8439, Page 1290, Instrument 2007004505, in the Official Records of **CAMDEN** County, the State of **New Jersey**, given to secure a certain Promissory Note in the amount of $172,000.00 covering the property located at **45 JACKSON LANE, SICKLERVILLE, NJ 8081.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

Dated: October __17__, 2017

ASSIGNOR: TOWD POINT MASTER FUNDING TRUST 2017-NP1

BY: FirstKey Mortgage, LLC, A Florida Limited Liability Company, Not In Its Individual Capacity But Solely As Administrator

By: _____

Name: Craig Eckes

Title: Authorized Signatory

State of: NEW YORK

County of: NEW YORK

Before me, _Josl Chavez_, duly commissioned Notary Public, on this day personally appeared Craig Eckes, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, Not In Its Individual Capacity But Solely As Administrator of TOWD POINT MASTER FUNDING TRUST 2017-NP1, known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this __17__ day of October, 2017.

_____
Notary Public's Signature

Printed Name: JOSE CHAVEZ
NOTARY PUBLIC, State of New York
No. 01CH6139294
Qualified in Westchester County
My Commission Expires: Commission Expires Jan. 05, 20__

Property Address: 45 JACKSON LANE, SICKLERVILLE, NJ 8081

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 11083 PG 452
RECORDED 03/05/2019 15:30:18
FILE NUMBER 2019015894
RCPT # 2133204; RECD BY: eRecord
RECORDING FEES 52.00
MARGINAL NOTATION FEE 10.00

## Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | 3739646 | 3267362 |
|---|---|---|---|

| | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 02/19/2019 | **Return Address** *(for recorded documents)* |
| **No. of Pages** *(excluding Summary Sheet)* | 2 | MERIDIAN ASSET SERVICES |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $52.00 | 3201 34TH STREET SOUTH SUITE 310 |
| **Realty Transfer Tax** | $0.00 | SAINT PETERSBURG, FL 33711 |
| **Total Amount** | $52.00 | |

| | |
|---|---|
| **Document Type** | ASSIGNMENT OF MORTGAGE |

**Municipal Codes**
  CAMDEN COUNTY                    99

**Batch Type**   L2 - LEVEL 2 (WITH IMAGES)

393640

---

**Additional Information (Official Use Only)**

---

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



**Camden County**
**Document Summary Sheet**

| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 01/08/2019 | | | | |
| | Reference Info | | | | | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 08439 | 1290 | 2007004505 | |

| ASSIGNOR | Name | Address |
|---|---|---|
| | MARK F DORITY SR | |
| | LISA L DORITY | |
| | MTGLQ INVESTORS LP | |

| ASSIGNEE AND MORTGAG: | Name | Address |
|---|---|---|
| | US BANK TRUST NATIONAL ASSOCIATION | |
| | CHALET SERIES III TRUST | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2019015894 BK 11083 PG 453

This space for Recorder's use

| Case Nbr: | Recording Requested By: | When recorded mail to: |
| Ref Number: | | |
| | Prepared By: | |
| Property Address: | Audrey B Trumble | |
| 45 JACKSON LANE | 855-369-2410 | |
| SICKLERVILLE, NJ 08081 | 3001 Hackberry Rd | |
| Property Location: | Irving, TX 75063 | |
| Township of WINSLOW | | |

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under a certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| Mortgagee: | ARGENT MORTGAGE COMPANY, LLC |
| Borrower(s): | MARK F. DORITY, SR., MARRIED MAN AND LISA L. DORITY, HIS WIFE |
| Date of Mortgage: | 12/20/2006 |
| Original Loan Amount: | $172,000.00 |

Recorded in Camden County, NJ on: 1/12/2007, book OR 08439, page 1290 and instrument number 2007004505

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**JAN 08 2019**

MTGLQ INVESTORS, L.P.

By: _____

Erin Jemison, Vice President

State of TX
County of Dallas

I CERTIFY that on this _____ day of __JAN 0 8 2019__ _____, 20____,                    )
                              **Bob Jamison**                    personally came before me and this person
aknowledged under oath, to my satisfaction, that:
(a) this person signed, sealed and delivered the attached document as
_____**Vice President**_____ of the entity named in the document;
(b) the proper corporate seal was affixed; and
(c) this document was signed and made by the entity as its voluntary act and deed by virtue of authority from its
Board of Directors.

_____
Notary Public    **Kiran Sonty**    OCT 1 7 2022
My Commission Expires : _____

Kiran Sonty
My Commission Expires
10/17/2022
ID No. 131763723

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 11111 PG 1977
RECORDED 04/12/2019 14:55:25
FILE NUMBER 2019026574
RCPT # 2148501; RECD BY: eRecord
RECORDING FEES 62.00
MARGINAL NOTATION FEE 10.00

## Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

Official Use Only

| Transaction Identification Number | | 3791909 | 3335676 |
|---|---|---|---|

| | | |
|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 04/08/2019 | **Return Address** *(for recorded documents)* |
| **No. of Pages** *(excluding Summary Sheet)* | 2 | MERIDIAN ASSET SERVICES |
| **Recording Fee** *(excluding transfer tax)* | $62.00 | 3201 34TH STREET SOUTH |
| | | SUITE 310 |
| | | SAINT PETERSBURG, FL 33711 |
| **Realty Transfer Tax** | $0.00 | |
| **Total Amount** | $62.00 | |

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

| CAMDEN COUNTY | 99 |
|---|---|

**Batch Type**   L2 - LEVEL 2 (WITH IMAGES)

**Additional Information (Official Use Only)**

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

**Camden County**
**Document Summary Sheet**

| | | |
|---|---|---|
| **Type** | ASSIGNMENT OF MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | |
| **Document Date** | 03/26/2019 | |
| **Reference Info** | | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 08439 | 1290 | 2007004505 | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | MARK F DORITY SR | |
| | LISA L DORITY | |
| | US BANK TRUST NATIONAL ASSOCIATION | |
| | CHALET SERIES III TRUST | |
| | MERIDIAN ASSET SERVICES LLC | |

| ASSIGNEE AND MORTGAG | Name | Address |
|---|---|---|
| | US BANK TRUST NATIONAL ASSOCIATION | |
| | LODGE SERIES III TRUST | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2019026574 BK 11111 PG 1978

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use _____

Loan No: ▮▮▮▮

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III
TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251,**
(ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS
TRUSTEE OF THE LODGE SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250,
SCOTTSDALE, ARIZONA 85251,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial
interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and
any rights due or to become due thereon.

Date of Mortgage: 12/20/2006
Original Loan Amount: $172,000.00
Executed by (Borrower(s)): **MARK F. DORITY, SR. & LISA L. DORITY**
Original Lender:  **ARGENT MORTGAGE COMPANY, LLC**
Filed of Record:  In Mortgage Book/Liber/Volume **08439, Page 1290,**
Document/Instrument No: **2007004505** in the Recording District of **CAMDEN, NJ**, Recorded on **1/12/2007.**

Property more commonly described as: **45 JACKSON LANE, SICKLERVILLE, NEW JERSEY 08081**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board
of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **MAR 2 6 2019**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY
MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **BRENDA DUTENHAVER**
Title: **VICE PRESIDENT**

Witness Name: **CAROLYNE WHITE**

POA BATCH # 11127
POA WAS RECORDED IN CAMDEN COUNTY,  NJ
ON 12/10/2018  /INST; 2817719 /BK: 11032 /PG: 1387

CFN 2019026574 BK 11111 PG 1979

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of   **PINELLAS**

**MAR 2 6 2019**
On _____, before me, **TERESA M. DE LA ROSA**, a Notary Public, personally appeared **BRENDA DUTENHAVER, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify BRENDA DUTENHAVER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal

TERESA M DE LA ROSA
Commission # GG 178438
Expires January 24, 2022
Bonded Thru Budget Notary Services

(Notary Name): **TERESA M. DE LA ROSA**
My commission expires: **01/24/2022**

# EXHIBIT D

Jonathan Schwalb, Esq.
Friedman Vartolo LLP
85 Broad Street, Suite 501
New York, New York 10004
Attorneys for SN Servicing Corporation
as servicer for U.S. Bank Trust National
Association as Trustee of the Loge Series III Trust
P: (212) 471-5100
Bankruptcy@FriedmanVartolo.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------X

|  |  |
|---|---|
| IN RE: | CASE NO.: 17-21374-JNP |
|  | CHAPTER: 13 |
| Mark F. Dority dba Mark Dority, |  |
|  | HON. JUDGE.: |
| Debtor. | Jerrold N. Poslusny Jr. |
|  |  |
|  | HEARING DATE: |
|  | June 11, 2019 at 10:00am |

-------------------------------------------------------------X

## CERTIFICATION RE POST-PETITION PAYMENT HISTORY ON THE NOTE AND MORTGAGE DATED 12/20/2006

_Marissa Alvarado_ of full age, employed as _Asset Manager_ by SN
Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the
Loge Series III Trust, hereby certifies the following information:

Property Address: 45 Jackson Lane, Sicklerville, NJ 08081

Mortgage Holder: SN Servicing Corporation as servicer for U.S. Bank Trust National

Association as Trustee of the Loge Series III Trust

Mortgagor(s)/Debtor(s): Mark F. Dority dba Mark Dority

POST-PETITION PAYMENTS (Post Petition Filed 06/01/2017)

| Amount Due | Due Date | Mo/Yr Payment Applied | Amount Received | Date of Payment | Running Suspense |
|---|---|---|---|---|---|
| $849.45 | 08/01/2017 | 08/17 | $0.00 | | |
| $849.45 | 09/01/2017 | 09/17 | $0.00 | | |
| $849.45 | 10/01/2017 | 10/17 | $0.00 | | |
| $849.45 | 11/01/2017 | 11/17 | $0.00 | | |
| $849.45 | 12/01/2017 | 12/17 | $0.00 | | |
| $849.45 | 01/01/2018 | 01/18 | $0.00 | | |
| $849.45 | 02/01/2018 | 02/18 | $0.00 | | |
| $849.45 | 03/01/2018 | 03/18 | $0.00 | | |
| $849.45 | 04/01/2018 | 04/18 | $0.00 | | |
| $849.45 | 05/01/2018 | 05/18 | $0.00 | | |
| $849.45 | 06/01/2018 | 06/18 | $0.00 | | |
| $849.45 | 07/01/2018 | 07/18 | $0.00 | | |
| $849.45 | 08/01/2018 | 08/18 | $0.00 | | |
| $849.45 | 09/01/2018 | 09/18 | $0.00 | | |
| $849.45 | 10/01/2018 | 10/18 | $0.00 | | |
| $849.45 | 11/01/2018 | 11/18 | $0.00 | | |
| $849.45 | 12/01/2018 | 12/18 | $0.00 | | |
| $849.45 | 01/01/2019 | 01/19 | $0.00 | | |
| $849.45 | 02/01/2019 | 02/19 | $0.00 | | |
| $849.45 | 03/01/2019 | 03/19 | $0.00 | | |
| $849.45 | 04/01/2019 | 04/19 | $0.00 | | |
| $835.98 | 05/01/2019 | 05/19 | $0.00 | | |
| Total: $18,674.43 | | | $0.00 | | |

Monthly payments past due: **21** mos. x **$849.45** (monthly payments 08/17-04/19) + Monthly payments past due: **1** mos. x **$835.98** (monthly payments 05/19) = **$18,674.43** as of **May 1, 2019.**

Effective current monthly payment is comprised of:

|  |  |
|---|---|
| Principal & Interest | $327.45 |
| R.E. Taxes | $508.53 |

| | |
|---|---|
| Insurance | $0.00 |
| Late Charge | $0.00 |
| Other | $0.00 |
| TOTAL | $835.98 |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary): N/A

Pre-petition arrears: N/A

I certify under penalty of perjury that the foregoing is true and correct.


5.20.19

Date

*Marissa Alvarado*